UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LESLIE BERENS,

                Plaintiff,

   v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

CASE NO. C17-00392BHS

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION

## I. BASIC DATA

Type of Benefits Sought:

    (X) Disability Insurance

    (  ) Supplemental Security Income

Plaintiff's:

    Sex: Female

    Age: 46 at alleged onset date

Principal Disabilities Alleged by Plaintiff: Stage one breast cancer, carpal tunnel syndrome, cervical degenerative disc disease, attention deficit disorder, and anxiety

Disability Allegedly Began: May 13, 2010

Principal Previous Work Experience: Hairdresser

Education Level Achieved by Plaintiff: High school diploma

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

Before ALJ Laura Valente:

    Date of Hearing: November 19, 2015; hearing transcript AR 710-48

    Date of Decision: January 29, 2016

    Appears in Record at: AR 691-703

    Summary of Decision:

> The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 13, 2010, through her date last insured of March 31, 2012. Through the date last insured, the claimant had the following severe impairments: right carpal tunnel syndrome, status post release in January 2011; cognitive disorder; affective disorder; and anxiety disorder. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

> Through the date last insured, the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except she could lift or carry up to 20 pounds occasionally and ten pounds frequently; she could stand or walk about six hours in an eight-hour workday; she could sit up to six hours in an eight-hour workday; she was limited to no climbing of ladders, ropes, or scaffolds; she could frequently perform all other postural activities; she was limited to occasional bilateral overhead reaching with the right upper (dominant) extremity; she was limited to frequent gross handling and fine fingering; the left upper extremity was not affected; she must avoid concentrated exposure to extreme cold; she had sufficient concentration for simple repetitive tasks; she could maintain concentration and pace in two-hour increments with usual customary breaks throughout an eight-hour day; she could work in proximity to co-workers, but not in coordination with them; she could work at a consistent pace with usual and customary breaks throughout an eight-hour day; she could work superficially and occasionally with the general public ("superficially" meaning that she could refer the public to others to resolve demands or requests but she herself was not having to resolve them); and she could interact frequently with supervisors and

> deal with workplace changes as may be required for simple repetitive work.
>
> Through the date last insured, the claimant was unable to perform any past relevant work. Through the date last insured, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. Therefore, the claimant was not under a disability, as defined in the Social Security Act, during the period from her alleged onset date of May 13, 2010, through her date last insured of March 31, 2012.

Before Appeals Council:

    Date of Decision: January 27, 2017

    Appears in Record at: AR 681-87

    Summary of Decision: Declined review

## III. PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

## IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other

ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V. EVALUATING DISABILITY

The claimant, Leslie Berens ("Berens"), bears the burden of proving that she is disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof during steps one through four. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. *Id.*

# VI. ISSUES ON APPEAL

1. Did the ALJ err in assessing the medical evidence in the record?
2. Did the ALJ err in assessing Berens's testimony?
3. Did the ALJ err in assessing the lay witness testimony in the record?

# VII. DISCUSSION

Berens appeals the Commissioner's decision denying her disability benefits, arguing that the ALJ committed several errors requiring reversal. Dkt. 10. The Court addresses the alleged errors in turn.

## A. Medical Evidence

Berens argues that the ALJ erred in evaluating the medical evidence in the record. *See* Dkt. 10 at 3-10. The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Id*. at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

### 1. Heather Kramm, M.D.

Berens argues that the ALJ erred by failing to account for the opinion of treating physician Heather Kramm, M.D., that Berens's wrist and hand pain were caused by arthropathy. *See* Dkt. 10 at 3-7. The Court finds no harmful error.

The ALJ reviewed Dr. Kramm's records and gave them "some weight," noting that the Berens's symptoms "may be consistent with inflammatory arthropathy." *See* AR 700. However, the ALJ discounted the severity of Berens's subjective complaints to Dr. Kramm because Berens's wrist and hand symptoms improved after surgery. *See id*. As discussed below, the ALJ did not err by discounting Berens's subjective complaints regarding her wrist and arm impairments. *See infra* § VII.B.

Berens argues that the ALJ erred by failing to adopt Dr. Kramm's assessment that Berens's wrist and hand symptoms stemmed from arthropathy. *See* Dkt. 10 at 3-7. However, any failure to find arthropathy to be a severe impairment was harmless. Where an ALJ finds in a claimant's favor at step two, any error in failing to determine other impairments to be severe is harmless so long as the ALJ considered the limitations stemming from those impairments throughout the remainder of the analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (finding that an ALJ's error is harmless where it is inconsequential to the ultimate disability determination). Here, the ALJ found in favor of Berens at step two, determining that she had several severe impairments, including carpal tunnel syndrome. *See* AR 693. The ALJ then considered Berens's wrist and hand impairments throughout the rest of the analysis, ultimately assessing Berens with an RFC with limited reaching,

handling, and fingering. *See* AR 697. Berens does not identify any specific limitations to which Dr. Kramm opined that were not accounted for in the RFC. *See* Dkt. 10 at 3-7. Therefore, Berens has not established any harmful error.

### 2. Temperence Evans, Psy. D.

Berens argues that the ALJ erred by failing to provide a specific and legitimate reason supported by substantial evidence to discount the opinion of examining psychologist Temperence Evans, Psy.D. *See* Dkt. 10 at 8-10. The Court disagrees.

In May 2011, Dr. Evans performed cognitive testing and found that Berens scored in the average to low average range on the majority of testing, with borderline results in working memory, processing speed, attention, and flexibility of thought. *See* AR 576. The ALJ gave some weight to the results of the objective testing, noting that Dr. Evans did not provide any function-by-function analysis. *See* AR 701. Therefore, based on these cognitive results and the functional analysis of a state agency psychological consultant, the ALJ assessed Berens with an RFC limiting her to simple, repetitive tasks, including the ability to manage the typical workplace changes associated with such work and to maintain concentration and pace for two-hour increments with customary breaks. *See* AR 697, 700-01.

Berens argues that the ALJ "rejected these findings because Dr. Evans did not conclude that [Berens] was able to work." *See* Dkt. 10 at 8. However, the ALJ did not reject the findings; the ALJ gave them some weight and translated them into an RFC after analyzing the entirety of the medical evidence. *See* AR 701. Berens also argues that the RFC did not sufficiently incorporate "limitations" found in Dr. Evans's report. *See* Dkt.

10 at 9-10. However, as noted by the ALJ, Dr. Evans did not provide a function-by-function analysis. *See* AR 701. Therefore, the limitations that Berens alleges are missing from the RFC are based on Berens's interpretation of the test results. The ALJ provided a rational interpretation of the test results in forming the RFC, so the Court must not reweigh the evidence. *See Thomas*, 278 F.3d at 954. Substantial evidence supports the ALJ's decision, so the ALJ did not err here.

        3.        **State Agency Medical Consultants**

Berens argues that the ALJ erred by giving too much weight to the opinions of state agency medical consultants. *See* Dkt. 10 at 7-8. The Court disagrees.

A state agency medical consultant is a "highly qualified" physician with expertise in evaluating "medical issues in disability claims." *See* Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 at *2. An ALJ must explain the weight given to the opinions in her decision. *See id*. Here, the ALJ gave the consultants' opinions great weight because their opinions were well supported by the medical evidence. *See* AR 700.

Berens argues that the ALJ erred by giving great weight to those opinions because the opinions were rendered in 2011, before Berens received treatment from Dr. Kramm. *See* Dkt. 10 at 7-8. However, the fact that other medical evidence was produced after the dates of the consultants' opinions does not alone render them stale. Instead, the ALJ must evaluate their consistency with the entire record, including any evidence produced after the consultants' opinions were issued. *See* SSR 96-6p at *2. Therefore, the ALJ did not err by giving the consultants' opinions great weight simply because evidence was produced after their opinions were issued.

## B. Berens's Testimony

Berens argues that the ALJ erred in evaluating her testimony. *See* Dkt. 10 at 10-16. The Court agrees in part.

Questions of credibility are solely within the control of the ALJ. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). Unless affirmative evidence shows the claimant is malingering, an ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834.

Berens testified that, during the relevant period, she experienced pain, tingling, and numbness in her arms and hands that could cause her hands to "lock" and become non-functional. *See* AR 715-17. The ALJ discounted the severity of the limitations to which Berens testified because the record indicated that Berens's symptoms improved after carpal tunnel release surgery. *See* AR 699. An ALJ may discount a claimant's testimony on the basis of medical improvement. *See Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Here, the ALJ noted that Berens reported to physicians that her surgery was helpful, that her symptoms had improved, and that she no longer had numbness or tingling during the relevant period. *See* AR 699 (citing AR 530, 586, 900, 1374). Therefore, substantial evidence supports the ALJ's reason for discounting the severity of the hand and arm limitations to which Berens testified.

Berens also argues that the ALJ did not give a sufficient reason to discount the cognitive limitations to which she testified. *See* Dkt. 10 at 14-16. However, while the

1 ALJ noted that Berens's cognitive testing results were largely in the average range, the

2 ALJ ultimately did not discount Berens's complaints and claimed to "completely

3 compensate for [Berens's] alleged cognitive issues" in the RFC.[1]  *See* AR 699-700.

4 Berens then argues that her testimony supported greater limitations than those included in

5 the RFC. *See* Dkt. 10 at 16. Berens testified to significant memory problems and stated

6 that concentrating and completing even simple tasks without getting distracted was "very

7 difficult." *See* AR 33, 42, 168, 173, 187, 736. The ALJ translated this testimony into an

8 RFC requiring her to complete simple, repetitive tasks and maintain concentration and

9 pace for two-hour increments. *See* AR 697, 700-01. This RFC is not a rational

10 interpretation of Berens's complaints. Therefore, the ALJ erred by failing to completely

11 compensate for Berens's alleged cognitive limitations.

12         The Ninth Circuit has "recognized that harmless error principles apply in the

13 Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

14 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)

15 (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a

16 whole to determine [if] the error alters the outcome of the case." *Id*. The Ninth Circuit

17 has "adhered to the general principle that an ALJ's error is harmless where it is

18 'inconsequential to the ultimate nondisability determination.'" *Id*. (quoting *Carmickle*,

---

[1] Were the Court to infer that the ALJ was discounting Berens's testimony due to its inconsistency with the objective medical testing, that reason alone would not be legally sufficient. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (a claimant's subjective complaints may not be rejected solely because the complaints are not supported by objective medical evidence).

533 F.3d at 1162) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Had the ALJ fully credited Berens's testimony, the RFC would have included additional limitations, as would the hypothetical questions posed to the vocational expert. As the ALJ's ultimate determination regarding disability was based on the testimony of the vocational expert on the basis of an improper hypothetical question, this error affected the ultimate disability determination and is not harmless.

**C.     Lay Witness Evidence**

Berens argues that the ALJ erred in evaluating the lay witness testimony of her sister, Tamara Creason. *See* Dkt. 10 at 16-17. The Court agrees.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Ms. Creason testified that Berens had difficulty completing tasks because of joint pain and cognitive impairments. *See* AR 198. The ALJ noted that it was "in Ms. Creason's best interest to support" Berens's allegations. *See* AR 701. However, "regardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.'" *Valentine*, 574 F.3d at 694 (internal citation omitted). Next, the ALJ

found that Ms. Creason's statement was "based largely" on Berens's self-reports. *See* AR 701. However, Ms. Creason's report repeatedly referred to changes in Berens's functionality that Ms. Creason personally witnessed. *See* AR 198. Finally, the ALJ discounted Ms. Creason's testimony because it was inconsistent with the medical evidence in the record. *See* AR 701. However, an ALJ may not reject lay witness evidence merely because it is not supported by the medical evidence in the record. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). Therefore, the ALJ erred by failing to provide a germane reason supported by substantial evidence to discount Ms. Creason's testimony.

**D.    Remand for Further Proceedings**

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, issues still remain regarding conflicts between the medical evidence and other testimony over Berens's functional capabilities and her ability to perform work despite any additional functional limitations. Accordingly, remand for further consideration is warranted in this matter.

## VIII. ORDER

Therefore, it is hereby **ORDERED** that the Commissioner's final decision denying Berens disability benefits is **REVERSED AND REMANDED**.

Dated this 12th day of September, 2017.

            BENJAMIN H. SETTLE
            United States District Judge